## M'KEEN v. DELANCY'S LESSEE.

Under the act of Pennsylvania of 1715, which requires a deed to be acknowledged before a justice of the peace of the county where the lands lie, it had been the long established practice before the year 1775 to acknowledge deeds before a justice of the supreme court of the province of Pennsylvania. And altho' the act of 1715 does not authorize such a practice, yet as it has prevailed it is to be considered as a correct exposition of the statute.

Under the same statute, if a deed conveyed lands in several counties, and was recorded in one of those counties, an exemplification of it was good evidence as to the lands in the other counties.

ERROR to the circuit court for the district of Pennsylvania, in an action of ejectment.

The only question was, whether the exemplification of a deed from Allen to Delancy, could be lawfully read in evidence at the trial.

This question arose upon the following case:

William Allen, on the 27th of December, 1771, being seised in fee of the land in controversy, lying in Northampton county, by deed of bargain and sale of that date, conveyed the same to James Delancy and Margaret his wife, in fee. The deed also conveyed real estate in the counties of Philadelphia and Bucks, and was acknowledged by the bargainor in the city of Philadelphia, on the 7th of December, 1772, before John Lawrence, one of the justices of the supreme court of the province of Pennsylvania, and recorded on the 11th of May, 1773, in the office of the recorder of deeds for the city and county of Philadelphia; but not recorded in the county of Northampton, nor in the county of Bucks, nor in any other county in Pennsylvania; offices for recording deeds being established in the said counties of Northampton and Bucks, according to law, from the date of the said deed to the present time.

The circuit court admitted the exemplification to be read in evidence; and the verdict and judgment were for the plaintiff below.

6

*Rodney*, Attorney-General, for the plaintiff in error.

By the laws originally agreed upon and adopted by William Penn and his followers, before they left England, in May, 1682, section 20. (*Appendix to Laws of Pennsylvania, p. 4.*) it was declared, that " to prevent *frauds* and vexations within the said province," " all conveyances of land made in the said province" " shall be enrolled or registered in the public enrolment-office of the said province, within the space of two months next after the making thereof, else to be void in law." Deeds made out of the province were to be enrolled in like manner within six months.

This shows that it was the prevailing sentiment among them that means should be taken to prevent clandestine conveyances ; and from thence it may be inferred that such was the intention and end of all their laws requiring the enrolment of deeds.

By the act of 1683, *c. 79.* (*Appendix, p. 9.*) it is enacted, " that all deeds of sale, mortgages, settlements, conveyances, (except leases for a year,) shall be declared and acknowledged in open court."

In 1688, a temporary law, to continue one year only, confirmed deeds theretofore made and not properly recorded, and allowed twelve months for recording deeds made out of the province, and six months for those made in the province ; otherwise they were to be void. The same act permits the recording of bills, bonds and specialties, for safe keeping, but expressly declares that such recording is not necessary as to those writings.

In 1693 it was enacted that deeds were good and valid, although never recorded ; and it was declared that no deeds or other writings shall be required to be recorded ; but that such deeds and writings as shall be enrolled or registered in the *Roll's Office*, and the exemplification of the records of the same.

in all courts of judicature, shall be allowed and judged as valid as the original.

Then came the act of 1715, c. 9. (*Laws of Pennsylvania, p.* 78.) the 1st section of which enacts, " that there shall be an office of record in each county in this province, which shall be called and styled *the office for recording of deeds,*" and that the recorder " shall record, in a fair and legible hand, all deeds and conveyances that shall be brought to him for that purpose, according to the true intent and meaning of this act." The 2d and 3d sections provide that all conveyances of land in the province " *may* be recorded in the *said office,*" but before the same could be recorded they were to be acknowledged or proved " before one of the *justices of the peace of the proper county* or city *where the lands lie.*"

The 4th section enacts, " that all deeds and conveyances made and granted out of this province, and brought hither and recorded in the county where the lands lie; (the execution thereof being first proved by the oath or affirmation of one or more of the witnesses thereunto, before one or more of the justices of the peace of this province," or before any mayor, &c. of the place where executed, certified, &c.) " shall be *as valid as if the same* had been made, acknowledged or proved *in the proper county where the lands lie* in this province."

The 5th section enacts, " that all deeds made, or to be made, and proved or acknowledged and recorded *as aforesaid,* which shall appear so to be, by endorsement made thereon, according to the true intent and meaning of this act, shall be of the same force and effect here, for the giving possession and seisin, and making good the title and assurance of the said lands, tenements and hereditaments, as deeds of feoffment with livery and seisin, or deeds enrolled in any of the king's courts of record at Westminster, are or shall be in the kingdom of Great Britain: and the copies or exemplifications of all deeds so enrolled, being examined by the recorder, and certified under the seal of the proper office, (which the

recorder or keeper thereof is hereby required to affix thereto,) shall be allowed in all courts where produced, and are hereby declared and enacted to be as good evidence, and as valid and effectual in law, as the original deeds themselves, or as bargains and sales enrolled in the said courts at Westminster, and copies thereof, can be, and that the same may be showed, pleaded and made use of accordingly."

M'KEEN<br>v.<br>DELANCY'S<br>LESSEE.

The 6th section declares the force and effect of the words " *grant, bargain and sell.*"

The 7th section declares the punishment for forging certificates of acknowledging and recording.

The 8th section enacts, " that no deed or mortgage, or defeasible deed in the nature of mortgages, hereafter to be made, shall be good or sufficient to convey or pass, any freehold or inheritance, or to grant any estate therein for life, or years, unless such deed be acknowledged or proved, and recorded within six months after the date thereof, *where such lands lie as herein before directed for other deeds.*"

The 9th and 10th sections prescribe the mode of acknowledging satisfaction of mortgages.

The 11th section appoints recorders for the respective counties of Philadelphia, Bucks and Chester, which were then the only counties in the province.

By this act no power was given to a judge of the supreme court. Indeed, no such court then existed. The supreme court was established by the act of May 22, 1722, section 11. but no such power is given thereby to the justices of that court.

The act of 1775 expressly gives the power to the justices of that court, from whence a strong inference is drawn that they had not the power before. The expressions of the second section of that act are, " that all such deeds and conveyances, which shall be made and executed out of this province, after the

publication of this act, and acknowledged or proved in manner as directed by the laws heretofore for that purpose made, *or* proved by one or more of the subscribing witnesses before any *supreme judge* of this province, shall be recorded," &c." It is clear from this mode of expression, that a deed acknowledged or proved before a *supreme judge*, was not acknowledged or proved *in manner as directed by the laws theretofore for that purpose made.* Such an acknowledgment, therefore, prior to the year 1775, was not legal, and did not, under any existing law, authorize the recording of the deed; and the exemplification of a deed from the records, not legally recorded, cannot be evidence.

This deed was acknowledged before a supreme judge prior to the year 1775, and not before any justice of peace of the province.

Again, it is clear from the purview of the act of 1715, that the proper office for recording deeds of lands, was the office in the county where the lands lie.

These lands lie in Northampton county, but the deed was recorded only in the office of the county of Philadelphia. This objection is as fatal as that respecting the acknowledgment.

*Lewis*, contra.

There was a supreme court in Pennsylvania long before the act of 1715. It is mentioned in the 9th section of the act of *March* 27, 1713, *c.* 3. where an appeal from the sentence of the orphans' court is given to the supreme court.

1. As to the place of record.

Part of the lands conveyed by this deed lie in the county of Pennsylvania, in which county the deed was recorded. It was therefore within the strict letter of the law *recorded in the county where the lands lie.* It was not necessary by the act that the

deed should be recorded in *every* county in which any part of the lands should lie. It was sufficient if recorded in the county where any part of the lands lie.

But it was not necessary that it should be recorded in the county where the lands or any part of them lie.

The object of the act was not *notice* but safe keeping of the deeds. It does not require that any deed should be recorded. It was intended merely for the benefit of the grantee, and for that purpose it was immaterial in what public office the deed was recorded. Before the act of 1715, the Roll's Office in Philadelphia was the only place of record. That act simply provided that there should be such an office in every county, to which people might with convenience resort to put their deeds on record for safe keeping.

By the 1st section of the law, the recorder in each county is bound to record *all* deeds *which shall be brought to him for that purpose*, whether the lands lie within or without the county. " The *said* office," in the 2d section, means either of the said offices. No time is limited within which the deed must be recorded.

The whole tenor of the act shows that the purpose of recording was merely for safe keeping.

Thus stood the law till the act of 1775 declared, that unless deeds and mortgages should be acknowledged, or proved and recorded, within a certain time, in the counties where the lands lie, such deeds or mortgages should be void as to creditors and subsequent purchasers.

The provisions of this act show that no such provisions existed before. The evil complained of in the preamble of the act, was the frauds upon creditors and subsequent purchasers by means of *secret* deeds

M'KEEN
v.
DELANCY'S
LESSEE.

and mortgages. This evil could not have existed if the object of the act of 1715 was to give notice.

The object of that act, therefore, was safe keeping. The recording or the omission to record the deed did not affect the title. It was therefore perfectly immaterial in which of the offices the deed should be recorded. It was perfectly optional with the grantee whether he would have his deed recorded at all; and if he did choose to have it recorded, it was equally optional with him in which of the offices it should be recorded.

2d. As to the acknowledgment.

It had been the cotemporaneous and uniform practice from the year 1715 to the date of this deed, to acknowledge deeds before a judge of the supreme court of Pennsylvania. That practice had never been questioned. The grantor in the present deed was the chief justice of that court and had been so for 40 years before. He and the judge who received the acknowledgment must have been perfectly satisfied of the practice, and that it had been unquestioned. Judge Peters, who sat in the trial of this cause in the court below, stated, and the whole bar admitted, the practice to be so. No person could be better acquainted with this practice than Judge Peters, whose father was secretary of the land-office, and who was himself a large landholder.

There never was a doubt suggested upon this subject until the present case. If the practice be now decided to be incorrect, it will cut deep into the titles of Pennsylvania.

LIVINGSTON, J. I doubt whether this court can take notice of such a practice unless it be spread upon the record by a bill of exceptions, or found by a special verdict. If we can, and if the practice be so, I think it puts an end to the question.

*Lewis.* The evidence of the practice was offered; not to the jury as a fact, but to the judge, to inform him what had been the construction uniformly put

upon the law by courts, judges and legislators, and by the whole people of the state.

MARSHALL, Ch. J. I do not know how this court can take notice of it as a practice or custom, without the consent of the parties; but I consider it as an exposition or construction of the law. If decisions of the courts of Pennsylvania had been made upon the question, they might be produced. If no cases are reported, the court will take other information as to the construction given to the law by the courts of Pennsylvania.

If such have been the uniform decisions of their courts at the time, as there are no reports of cases, if the counsel agree as to the construction given by the courts, this court can receive it as evidence of those decisions. But if gentlemen differ in their statements, the court would not be willing to decide as to the credit to be given to the one statement or the other.

*Ingersoll*, for the plaintiff in error, said he could not admit any statement admitting that it had been the practice to admit in evidence exemplifications of deeds not recorded in the county where the lands lie.

*Lewis* named 27 cases in which he had been concerned as counsel, and in which such exemplifications had been used in evidence, and no objection ever taken.

MARSHALL, Ch. J. That part of the argument may be omitted for the present, and if the court should not be able to decide the case without evidence of the practice, we will decide whether we will hear the statements on that subject.

*Lewis.* Part of the lands lie in Philadelphia county, where the deed was recorded. An exemplification would be good evidence in a contest respecting those lands, and if good evidence for one purpose, it will be good as to the other.

If the law authorizes a deed to be recorded in a particular office, an exemplification from that office is good evidence in all cases. It would have been good evidence in an action of covenant upon the deed ; and there can be no difference in an action of ejectment. *Gilb. Ev.* 97. 99, 100. 2 *Vin. Abr.* 598. 12 *Vin.* 105. 107. 2 *Eq. Cas. Abr.* 413.

*Ingersoll,* in reply.

The common law did not require any deed to be recorded. Before the act of 1715, the English register acts, and the acts for enrolment of deeds, were well known in Pennsylvania : and they were for the purpose of notice. The evil to be remedied was the frequency of clandestine conveyances.

The 1st section of the act does not require the recorder to record " all deeds and conveyances which shall be brought to him for that purpose," but " all deeds and conveyances which shall be brought to him for that purpose *according to the true intent and meaning of this act;*" that is, all deeds and conveyances of land *lying in his county.*

The 2d and 3d sections require the acknowledgment or proof to be before *one of the justices of the peace of the proper county or city where the lands lie.* The power to certify acknowledgments was not given to a judge of the supreme court until 1775, when the express grant of the power was strong evidence that they did not already possess it.

There is no more reason that a foreign deed should be proved and recorded in the county where the lands lie, than that a domestic deed should be so proved and recorded. Yet the 4th section of the act is explicit with regard to foreign deeds, that they shall be so proved and recorded; and in order to show that they meant the same thing in the case of domestic deeds, the legislature say that a foreign deed, so proved and recorded, shall be as valid " as if the same had been made, acknowledged, or proved, *in the proper county where the lands lie;*" thereby

intimating, that the acknowledgment or proof in the county where the lands lie, was the proper mode in all other cases.

The 5th section immediately follows, and declares that all deeds " proved or acknowledged and recorded *as aforesaid,*" shall transfer the possession, and that exemplifications thereof shall be evidence.

Here the words " *as aforesaid*" refer to the description last antecedent, that is, *in the county where the lands lie.* Again in the 8th section it is declared, that no mortgage shall be good unless acknowledged or proved and recorded *where the lands lie* " *as herein before directed for other deeds.*" This expression clearly shows that the legislature had before directed that other deeds should be recorded *where the lands lie.*

They had mentioned before but two other kinds of deeds, viz. *foreign* and *domestic.* With regard to foreign deeds they had been as explicit as in the case of mortgages; and if any doubt could be raised as to their expressions relative to *domestic* deeds, that doubt must be removed by the expressions in the 4th and 8th sections.

### March 11.

MARSHALL, Ch. J. delivered the opinion of the court as follows, viz.

This case depends entirely on the acts of the legislature of Pennsylvania, respecting the registering of deeds.

The law of Pennsylvania, on this subject, had varied at different times; but as it stood in 1715, when the act passed which must decide this controversy, the recording of a deed was not necessary to its validity; but deeds might be enrolled, and an exemplification was testimony in all courts.

The act of 1715 established an office of record in

each county in which deeds were to be recorded, and declared an exemplification from the record to be as good evidence as the original. This act, however, does not make the recording of a deed essential to its validity.

To entitle a deed to be recorded, the act requires that it shall be acknowledged or proved " before one of the justices of the peace of the proper county or city where the lands lie."

In this case the lands lie in different counties ; and the deed was acknowledged before John Lawrence, one of the justices of the supreme court of Pennsylvania ; and was recorded in the office for the city and county of Philadelphia, in which a part of the lands lie. The land, however, for which this suit was brought, lies in a different county.

The first question which presents itself in this cause is, was this deed properly proved?

Were this act of 1715 now, for the first time, to be construed, the opinion of this court would certainly be, that the deed was not regularly proved. A justice of-the supreme court would not be deemed a justice of the county, and the decision would be, that the deed was not properly proved, and therefore not legally recorded.

But, in construing the statutes of a state on which land titles depend, infinite mischief would ensue, should this court observe a different rule from that which has been long established in the state ; and in this case, the court cannot doubt that the courts of Pennsylvania consider a justice of the supreme court as within the description of the act.

It is of some weight that this deed was acknowledged by the chief justice, who certainly must have been acquainted with the construction given to the act, and that the acknowledgment was taken before another judge of the supreme court. It is also re-

collected that the gentlemen of the bar, who sup-
ported the conveyance, spoke positively as to the
universal understanding of the state, on this point,
and that those who controverted the usage on other
points, did not controvert it on this. But what is
decisive with the court is, that the judge who pre-
sides in the circuit court for the district of Penn-
sylvania, reports to us that this construction was
universally received.

On this evidence the court yields the construction
which would be put on the words of the act, to that
which the courts of the state have put on it, and on
which many titles may probably depend.

The next question is, was this deed recorded in
such an office as to make the exemplification evi-
dence?

Without reviewing all the arguments which have
been urged from the bar, or all the sections of the
act, it may be sufficient to observe, that this court is
satisfied that, where a single tract of land is convey-
ed, the law requires the deed to be recorded in the
office of the county in which the land lies; but if
several tracts be conveyed, it appears to this court
that neither the letter nor the spirit of the act re-
quires that the deed should be recorded in each
county.

It is material in the construction of this act, that
the validity of the deed is not affected by omitting
to record it. Though not recorded, it is still binding
to every intent and purpose whatsoever. The only
legal effect produced by recording it is its preserva-
tion, by making a copy equal to the original. The
principal motive, then, for requiring that it should
be proved before a justice of the particular county
in which the land lies, and recorded in that county,
is that which has been assigned at the bar. It is the
additional security given by those provisions, that a
deed, never executed, might not be imposed on the
recorder. This object is as completely obtained by
placing the deed on the records of that county in

M'KEEN
v.
DELANCY'S
LESSEE.

which one of the tracts of land lies, as it could be if the deed conveyed no other tract. The verity of the deed is-as completely secured in the one case as in the other.

It appears to the court also to be within the letter of the law. This deed was unquestionably properly admitted to record in the office of the city and county of Philadelphia. It conveyed lands lying within that city and county, and, on any construction of the act, might be there recorded. The act then proceeds to say, "that the copies of all deeds, so enrolled, shall be allowed in all courts where produced, and are hereby declared and enacted to be as good evidence, and as valid and effectual in law, as the original deeds themselves."

The whole deed, then, is evidence by the letter of the act. The whole is a copy from the record. If the validity of the conveyance depended on its being recorded in the county where the land lies, then a deed might be good as to one tract, and bad as to another. But the deed is valid, though not recorded; and the question is, whether the copy is evidence as to every thing it contains. The execution of the deed is one entire thing, and is proved so as to admit the instrument to record. The copy, if true in part, is true in the whole ; and if evidence in part, must, under the act, and on the general principle that it is the copy of a record, be evidence in the whole.

There is no error in the judgment of the circuit court; and *it is affirmed with costs.*