SUPERVISORS v. UNITED STATES.

Section 3275 of the Code of Iowa, which says:

"In case no property is found upon which to levy, which is not exempted by the last section (section 3274), or if the judgment creditor elect not to issue execution against such corporation (a municipal one), he is entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness issued by that corporation. And if the debtor corporation issues no scrip or evidences of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs"—

confers no independent power to levy a specific tax in order to pay a judgment recovered against a municipal corporation on warrants for ordinary county expenditures issued by such corporation since 1863, in which year (as repeatedly since) the Supreme Court of Iowa decided this to be the true interpretation of the section, and that where the power had not otherwise been conferred it was not given by that section.

*Butz* v. *City of Muscatine*, where some language tending perhaps to a different conclusion was used, distinguished from this case, in that here the judgment was obtained after 1863, when the meaning of the section had been passed on by the Supreme Court of Iowa, and that there the bonds sued on were issued prior to 1863, and when no decision as to the meaning of the section had been made by the Supreme Court of Iowa, and when this court "felt at liberty to adopt its own construction and apply it to the case of the holder of the bonds, though it was adverse to that announced by the State court years after the bonds had been issued."

IN error to the Circuit Court for the District of Iowa; the case being thus:

On the 13th of May, A.D. 1869, one Reynolds obtained in the court just named a judgment against Carroll County, Iowa, for the sum of $19,946. The judgment was for the amount due upon sundry county warrants issued *for the ordinary expenditures of the county;* all issued after January 1st, 1865. An execution having been awarded upon the judgment and returned "*nulla bona,*" Reynolds sued out a writ of mandamus to compel the board of supervisors of the county to levy a specific tax sufficient to pay the debt, interest, and costs, and to apply the same, when collected, to the payment. To this writ the supervisors returned, in substance (after averring that the judgment had been obtained upon ordinary county warrants issued *for the ordinary expenditures of the county*), that they had levied a county tax for the current year of four mills on the dollar of the taxable property of the county, and that they proposed to levy a similar tax for each succeeding year until the judgment should be paid. They further returned that they had no power to levy a tax at any higher rate. A general demurrer to this return was then interposed, and the Circuit Court sustained it. Hence this writ of error.

The question was whether, under the laws of Iowa, the board of supervisors had power to levy a special tax, beyond four mills on the dollar of the county assessment, in order to pay the relator's judgment.

The solution of this question and the consequent correctness of the action of the Circuit Court depended upon the

fact whether that court had rightly interpreted certain sections in the Revised Code of Iowa.

Section 710, of the revision of 1860, is as follows:

"The board of supervisors of each county in this State shall annually, as hereinafter provided, levy the following taxes upon the assessed value of the taxable property in the county:

"1st. For State revenue, one and one-half mills on a dollar, when no rate is directed by the census board, but in no case shall the census board direct a levy to be made exceeding two mills on the dollar.

"2d. *For ordinary county revenue, including the support of the poor, not more than four mills on a dollar*, and a poll tax of fifty cents.

"3d. For support of schools, not less than one nor more than two mills on a dollar.

"4th. For making and repairing bridges, not more than one mill on the dollar, whenever the board of supervisors shall deem it necessary."

By an act of April 2d, 1860, which took effect on the 1st of January, 1861, the board of supervisors became the financial agents in place of the county judge.

Section 250* is this:

"The county judge [or as in consequence of the abovementioned act it now was *the board of supervisors*] may submit to the people of his county at any regular election, or a special one called for that purpose, the question whether the money may be borrowed to aid in the erection of public buildings; whether the county will construct or aid to construct any road or bridge which may call for an extraordinary expenditure; whether stock shall be permitted to run at large, or at what time it shall be prohibited, and the question of any other local or police regulation not inconsistent with the laws of the State. And when the warrants of the county are at a depreciated value, he may in like manner submit the question whether a tax of a higher rate than that provided by law shall be levied, and in all cases when an additional tax is laid in pursuance of a vote

---

* Revision of 1860, or § 114 of the Code of 1851.

of the people of any county, for the special purpose of repaying borrowed money, or of constructing or aiding to construct any road or bridge, such tax shall be paid in money and in no other manner."

The sections following, to 260, contain the details for the submission of questions, and provide for carrying into effect the propositions mentioned in section 250, which may be adopted by a vote.

Section 252 declares:

"When a question so submitted involves the borrowing or the expenditure of money, the proposition of the question must be accompanied by a provision to lay a tax for the payment thereof in addition to the usual taxes, as directed in the following section, and no vote adopting the question proposed will be of effect unless it adopt the tax also."

Sections 3274 and 3275, in a chapter entitled "Execution," are as follows:

"Section 3274. Public buildings owned by the State, or any county, city, school district, or other civil corporation, and any other public property which is necessary and proper for carrying out the general purposes for which any such corporation is organized, are exempt from execution. The property of a private citizen can in no case be levied upon to pay the debt of a civil corporation.

"Section 3275. In case no property is found on which to levy, which is not exempted by the last section, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness issued by that corporation. *And if the debtor corporation issues no scrip or evidences of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs."*

The Circuit Court in overruling the demurrer considered, of course, that the provision in italic letters in the above-quoted section 3275· authorized a levy sufficient to pay the judgment.

*Mr. Isaac Cook, for the plaintiffs in error:*

The Supreme Court of Iowa has held uniformly that section 3275 does *not* invest corporations with the power to levy taxes. That court holds that this section directs duties to be performed by the taxing officers, under powers given elsewhere in the statute, but does not extend their powers beyond the limits prescribed in other parts of the statutes, where the power to levy taxes is expressly given, and the limit fixed beyond which taxes cannot be levied. The decisions of that court on this subject have been uniform, and extend through a term of about ten years. This was the point adjudged in *Clark, Dodge & Co.* v. *The City of Davenport,** decided in 1863; and in *The Iowa Railroad Land Company* v. *Sac' County and Duffy,* and in the case of the *Same Plaintiff* v. *Sac County and Hobbs,* decided in 1873, and not yet officially reported.

In addition to the decisions of the Supreme Court of Iowa above cited, attention must be called to the fact, of which this court will take judicial cognizance, that the legislature by a code of 1873,† has re-enacted in the same language the material parts of section 3275 of the revision of 1860. The legislature has thus adopted the construction given to that statute by the Supreme Court. The re-enactment of a previous statute operates as a legislative adoption of the judicial construction of such statute. It is, therefore, as fully settled as legislative enactments and judicial determination can settle anything, that by the laws of Iowa, a special tax cannot be levied to pay a judgment against a county rendered upon ordinary county warrants. And that when the board of supervisors have levied an ordinary county tax of four mills on the dollar, they have levied the greatest tax which they have the power to levy for the payment of such judgment.

The construction given to a statute of a State by the highest judicial tribunal of such State, is regarded as a part

---

* 14 Iowa, 494.                              † Section 3049.

of the statute, and is as binding upon the courts of the
United States as the text.*

*Mr. James Grant, contra:*

We are aware of the construction put by the Supreme
Court of the State of Iowa upon section 3275. But with
that construction full before it, this court, in *Butz* v. *City of
Muscaline,*† has put an exactly opposite construction on it.
Speaking by SWAYNE, J., this court there said that "the
limitation . . . touching the power of taxation by the city
council, applies to the *ordinary course* of their municipal
action. . . .

"But when a judgment has been recovered, the case is within
the regulation of the code. . . . The extent of the necessity is
the only limitation expressed or implied in the code, of the
amount to be levied."

The learned justice still speaking for the court says, in
words which apply directly to the present case:

"If these views be not correct the position of the judgment
creditor is a singular one. All the corporate property of the
debtor is exempt by law from execution. The tax of 1 per cent.
is all absorbed by the current expenses of the debtor. There
is neither a surplus nor the prospect of a surplus, which can be
applied upon the judgment. The resources of the debtor may
be ample, but there is no means of coercion. . . . The judgment
though solemnly rendered is as barren of results as if it had no
existence. . . . Nothing less than the most cogent considerations
could bring us to the conclusion that it was the intention of the
law-making power of so enlightened a State, to produce by its
action such a condition of things in its jurisprudence."

After such language as this, it is no answer to us to say
that the case of *Butz* v. *City of Muscatine* differed in some
minor points of fact or date from this case.

So in respect to the obligation of this court to follow the

---

* Leffingwell *v.* Warren, 2 Black, 599; Christy *v.* Pridgeon, 4 Wallace,
196.

† 8 Wallace, 575.

decisions of the Supreme Court of Iowa, "more or less adverse" to the views above expressed, the learned justice continues:

"Entertaining the highest respect for those by whom they were made, we have yet been unable to concur in the conclusions which they announce. It is alike the duty of that court and of this to decide the questions involved in this class of cases as in all others when presented for decision. This duty carries with it investigation, reflection, and the exercise of judgment. It cannot be performed on our part by blindly following in the footsteps of others and substituting their judgment for our own. Were we to accept such a solution we should abdicate the performance of a solemn duty, betray a sacred trust committed to our charge, and defeat the wise and provident policy of the Constitution which called this court into existence."

This court accordingly—disregarding the construction put upon the Code of Iowa by the Supreme Court of that State—reversed a judgment which refused a mandamus, and ordered a contrary judgment.

Mr. Justice STRONG delivered the opinion of the court.

It is very plain that a mandamus will not be awarded to compel county officers of a State to do any act which they are not authorized to do by the laws of the State from which they derive their powers. Such officers are the creatures of the statute law, brought into existence for public purposes, and having no authority beyond that conferred upon them by the author of their being. And it may be observed that the office of a writ of mandamus is not to create duties, but to compel the discharge of those already existing. A relator must always have a clear right to the performance of a duty resting on the defendant before the writ can be invoked. Is it, then, the duty of the board of supervisors of a county in the State of Iowa to levy a special tax, in addition to a county tax of four mills upon the dollar, to satisfy a judgment recovered against the county for its ordinary indebtedness? The question can be answered only by reference to the statutes of the State.

By an act of the legislature enacted on the 22d of March, 1860,* it was declared that in each organized county of the State there should be a board of supervisors, the duties of which were defined. Prior to that time the financial affairs of the several counties had been, by the law, committed to the charge of a county judge. But on the 2d of April, 1860, a further act was passed, to take effect on the first day of January, 1861, which enacted that all laws in force at the time of its taking effect, devolving any jurisdiction or powers on county judges, should be held to apply to and devolve such jurisdiction upon the county board of supervisors, in the same manner and to the same extent as though the words " county board of supervisors " occurred in said laws instead of the words " county judge."† Whatever power, therefore, the county judge possessed prior to that enactment to levy taxes for any purpose, was devolved upon the county board, with all its limitations. They may levy those taxes which he was empowered to levy, and no more, unless larger authority has, by other statutes, been given to them. By the act of April 3d, 1860 (Civil Code, section 710), they are required to levy the following taxes annually upon the assessed value of the taxable property in the county : 1st. For State revenue one and one-half mills on a dollar when no rate is directed by the census board, and that board is prohibited from directing a rate greater than two mills on a dollar. 2d. For ordinary county revenue, including the support of the poor, not more than four mills on a dollar, and a poll tax of fifty cents. 3d. For support of schools not less than one and not more than two mills on a dollar. And, 4th, for making and repairing bridges not more than one mill on the dollar, whenever they shall deem it necessary. This act confers all the powers which the county board possess to levy a tax for ordinary county revenue. It is not claimed that larger authority was ever given. And this, it is to be observed, is expressly limited to the levy of a tax of not more than four mills upon the dollar.

---

* Civil Code of 1860, § 302, *et seq.*          † Ib. § 330.

The board, however, have authority, in certain specified cases, to levy a special tax to defray certain extraordinary expenditures.  Succeeding, as they did, to the powers and duties of the county judge, whatever he was authorized to do in this behalf they may do.  He had been empowered by section 250 of the code to submit to the people of the county at any regular election, or at a special one called for that purpose, the questions whether money might be borrowed to aid in the erection of public buildings; whether the county would construct, or aid to construct, any road or bridge which might call for an extraordinary expenditure; whether stock should be permitted to run at large, and, generally, any question of local or police regulation not inconsistent with the laws of the State.  He was also empowered, whenever the warrants of the county were depreciated in value, to submit the question whether a tax of a higher rate than that provided by law should be levied, and the 252d section enacted that when a question so submitted involved the borrowing or expenditure of money, the submission of the question should be accompanied by a provision to lay a tax for the payment thereof, in addition to the usual tax, and that no vote approving the borrowing or expenditure should be of any effect unless the tax was also adopted. Thus it appears that the statutes of the State have made provision for ordinary county taxes, limiting them to a rate not exceeding four mills, and, also, for special taxes beyond that limit, in certain defined contingencies.  No statute was in existence when this writ was sued out authorizing the county board to levy a special tax for ordinary revenue, or for ordinary expenditure, or, indeed, for any purpose except those we have noticed, unless it be found in section 3275 of the code, to which we shall presently refer.  And the legislature of the State has made a clear distinction between ordinary county taxation, which the board of county supervisors may, at their discretion, levy within prescribed limits, and special taxation for extraordinary emergencies, which can only be imposed in obedience to a popular vote.

In this case the warrants upon which the relator's judg-

ment was obtained were all ordinary warrants, drawn upon the treasurer of the county, and, as is admitted by the demurrer, drawn for the ordinary expenses of the county. None of them were issued in pursuance of a popular vote, or for any extraordinary expenditure. They were such instruments as the legislature contemplated might be employed in conducting the current and usual business of the county. The act which empowers the county board to levy a tax for ordinary county revenue speaks of them and evidently intends that they shall be satisfied, either from the proceeds of that tax, or by their being received in payment thereof. They are simply a means of anticipating ordinary revenue.

But it has been argued on behalf of the relator, that section 3275 of the code confers upon the county board the power, and makes it their duty to levy a special tax beyond the tax authorized by section 710, whenever a judgment has been recovered against the county, even though that judgment may be for ordinary county indebtedness. That section is found in a statute relating to executions, and it is as follows: "In case no property is found upon which to levy, which is not exempted by the last section (section 3274), or if the judgment creditor elect not to issue execution against such corporation (a municipal one), he is entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness issued by that corporation. And if the debtor corporation issues no scrip or evidences of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs." The next preceding section had enacted that public buildings owned by the State or any municipal corporation, and any other public property necessary and proper for carrying out the general purpose for which any such corporation is organized, should be exempt from execution; and that the property of a private citizen should in no case be levied upon to pay the debt of such a corporation. Neither of these sections declares that a *special* tax shall, or may be levied to pay any judgment against a municipal body. All that is said is, that in certain

contingencies, a tax must be levied sufficient to pay off the judgment. But whether this tax is to be a special one, or the tax authority to levy which was given to the county board by the 710th section, the act does not say. It is certainly remarkable, that if it was intended to grant a new power to levy a tax for the payment of ordinary county indebtedness, when that indebtedness has been brought to judgment, the power should be granted in a statute relating solely to executions, without any direction by whom it should be exercised, and that the additional grant should be left to inference, instead of being plainly expressed. The powers committed to the county board were declared in the statutes relating to it and to its duties. If others were intended to be given, it is strange, to say the least, that the gift was not made when the legislature had the subject of the board and its powers under consideration. And if a special tax to pay a judgment was contemplated, it is hard to see why it was not provided for when the legislature had the subject of special county taxes before it, and when provision was made for levying such a tax to pay depreciated county warrants, if approved by a popular vote. We do not propose, however, to discuss the question now. It has already been answered, and we must accept the answer. The Supreme Court of Iowa has decided in several cases that section 3275 confers no independent power to levy a specific tax in order to pay a judgment recovered against a municipal corporation, and that when the power has not otherwise been conferred, it is not given by that act. This was decided in 1863, in the case of *Clark, Dodge & Co.* v. *The City of Davenport,** before any of the warrants were issued upon which the relator's judgment was founded, and the construction then given to the statute has been repeatedly asserted and consistently maintained. It is, therefore, and it always has been the settled law of the State. That the construction of the statutes of a State by its highest courts, is to be regarded as determining their meaning and generally as binding upon United States

---

* 14 Iowa, 494.

courts, cannot be questioned. It has been asserted by us too often to admit of further debate.* We have even held that when the construction of a State law has been settled by a series of decisions of the highest State court, differently from that given to the statute by an earlier decision of this court, the construction given by the State courts will be adopted by us.† And we adopt the construction of a State statute settled in the courts of the State, though it may not accord with our opinion.‡ There is every reason for this in the consideration of statutes defining the duties of State officers. It is true, that when we have been called upon to consider contracts resting upon State statutes, contracts valid at the time when they were made according to the decisions of the highest courts of the State, contracts entered into on the faith of those decisions, we have declined to follow later State court decisions declaring their invalidity. But in other cases we have held ourselves bound to accept the construction given by the courts of the States to their own statutes.

It is insisted, however, that in *Butz* v. *The City of Muscatine*,§ this court ruled that section 3275 of the code did give power to the city councils of Muscatine to levy a special tax beyond the statutory limit of ordinary city taxation, sufficient to pay a judgment which had been recovered against the city. This is true. But the facts of that case must be considered. The judgment had been recovered upon bonds issued by the city in 1854. At the time they were issued no decision had been made by the Supreme Court of the State to the effect that section 3275 was not an enabling statute authorizing a tax beyond that allowed by other statutes. It was not until nine years afterwards that the Supreme Court of the State was called upon to determine its meaning. Hence this court felt at liberty to adopt its own

---

* See numerous cases, Brightly's Federal Digest, 163.

† Green *v.* Neal's Lessee, 6 Peters, 291 ; Suydam *v.* Williamson, 24 Howard, 427 ; Leffingwell *v.* Warren, 2 Black, 599.

‡ McKeen *v.* Delancy, 5 Cranch, 22.                    § 8 Wallace, 575.

construction and apply it to the case of the holder of the bonds, though it was adverse to that announced by the State court years after the bonds had been issued.   But at the same time it was said, "if the construction given to the statute by the State court' had preceded the issuing of the bonds, and become the settled law of the State before that time, the case would have presented a different aspect."

In the case we have now in hand, it appears that the warrants upon which the relator recovered his judgment, not only were for the ordinary indebtedness of the county, but that they were issued after it had become the settled law of the State, announced in the decisions of its highest court, that the section of the statute relative to executions, now under consideration, did not enlarge the authority of a county board of supervisors, and did not authorize the levy of a tax beyond that provided for in section 710 ; that is, a tax in excess of the rate of four mills on the dollar.   The holders of the warrants were, therefore, informed when they took them, that by the laws of the State no special tax could be levied for their payment, unless the question whether such a tax might be laid should first be submitted to the people and by them answered in the affirmative, according to the directions of sections 250 and 252, to which reference has heretofore been made.   In this particular the case differs from *Butz* v. *The City of Muscatine.*   Looking at the difference, we think there is no sufficient reason why we should now depart from the construction which the courts of the State have uniformly given to its statutes.

It follows that, in our judgment, the return to the alternative mandamus was a sufficient return, that the respondents had no power to levy the special tax called for, and as a writ of mandamus can compel the performance only of some act which the law authorizes, that the demurrer to the return should not have been sustained.

Judgment reversed, and the record remitted with directions to give judgment on the demurrer

FOR THE DEFENDANTS BELOW.

Mr. Justice CLIFFORD, with whom concurred Mr. Justice SWAYNE, dissenting:

I dissent from the judgment of the court in this case, holding that this court should adhere to its former decision, as it appears that the State statute when the bonds in that case were issued had not been construed by the State court.

Where the construction of a State statute is involved in a case presented here for decision, and it appears that the statute in question has not been construed by the State court, I hold that it is the duty of this court to ascertain and determine what is its true construction, and that this court, under such circumstances, will not reverse its decision in the same or a subsequent case, even though the State court may afterwards give a different construction to the same statute.