UNITED STATES *ex rel.* HAYT *v.* BOARD OF DIRECTORS OF INDEPENDENT SCHOOL-DISTRICT OF MONONA and another.

*(Circuit Court, S. D. Iowa, C. D.* May Term, 1884.)

TAXES—CERTIFICATE OF AMOUNT—BOARD OF DIRECTORS OF SCHOOL-DISTRICT—LIMITATION—COUNTY BOARD OF SUPERVISORS—LEVY OF TAXES—AMOUNT—MANDAMUS.

The laws of Iowa examined, and *held* that there is no limitation upon the amount which a board of directors of an independent school-district may certify to as a tax necessary to raise funds to meet the interest and principal of bonds properly issued under the authority of a vote of the electors of the district; and it is the duty of the board of supervisors of a county to levy the vote certified by the directors, and a writ of *mandamus* to compel them to do so may be issued.

Demurrer to return to *Mandamus.*
*Parsons & Runnells,* for relator.
*Mitchell & Dudley,* for respondents.

SHIRAS, J. At the October term, 1883, of this court an alternative writ of *mandamus* was issued in the above cause, requiring the board of supervisors of Clayton county, Iowa, to levy the full tax certified to them by the board of directors of the independent school-district of Monona, for the purpose of paying the judgment in favor of the relator. It appears that the board of directors of the school-district, in obedience to a writ of *mandamus* from this court, had certified a tax of 75 mills on the dollar to the board of supervisors as the rate needed to pay the amount of the judgment in favor of the relator. The board of supervisors refused to levy a tax greater than 10 mills on the dollar, and thereupon the relator procured the issuance of an alternative writ to the board of supervisors, requiring the board to

levy the tax certified by the directors, or to show cause to the contrary. The board of supervisors file a return to the writ, setting forth that under the statutes of Iowa 10 mills is the highest rate of taxation allowed in the independent school-districts for school-house fund, including the payment of debts incurred in the erection of school-houses, and that the board of supervisors cannot, therefore, be required to levy a tax in excess of that rate for the payment of the judgment due relator. To this return a demurrer was filed on behalf of the relator, and thereby the question is presented whether the property of independent districts can be subjected to a tax greater than 10 mills, in any one year, for the purposes embraced within what is known as "the school-house fund." ·

· In the case of *U. S.* v. *County of Macon,* 99 U. S. 582, it was ruled that the court could by *mandamus* only bring into operation the power and right of taxation existing at the time the debt was created, and such increase of the right of taxation as might have been conferred upon the county after the creation of the debt. In other words, it was held that if, by the terms of the special act providing for the issuing of the bonds, or of the general statutes of the state, a limitation upon the rate of taxation was fixed, the purchasers of the bonds took the same subject to this limitation, and that the court could not compel the levy of a tax in excess of this rate, even if it should appear that the rate thus fixed by the statute was wholly inadequate to meet the demands against the county.

The question, therefore, for determination is whether, at the time the bonds were issued by the independent district of Monona, there was a limit upon the rate of taxation by independent districts, and, if so, whether this limitation has since been removed. The ninth general assembly of this state passed an act providing for the organization of school-districts and of independent districts. By section 7 of this act is declared the powers that belong to the electors of the district when assembled at the annual meeting, among which is the power "to vote such tax, not exceeding five mills on the dollar in any one year, on the taxable property of the district township, as the meeting shall deem sufficient, for the purchase of grounds and the construction of the necessary school-houses for the use of the subdistricts, and for the payment of any debts contracted for the erection of school-houses, and for procuring district libraries and apparatus for the schools." Sections 84 to 91, inclusive, provide for the creation of independent districts, no special provision being found therein touching the levy of taxes for any purpose; it being, however, declared in section 89 that such school-districts "shall be governed by the laws enacted for the regulation of district townships, so far as the same may be applicable."

The tenth general assembly, by an act approved March 19, 1864, amended section 89 of the act of the ninth general assembly by adding thereto the following:

"Provided, that it shall be lawful for the electors of any independent school-district, at the annual meeting, to vote a tax not exceeding ten mills on the dollar, in any one year, on the taxable property of such district, as the meeting may deem sufficient, for the purchase of grounds and the construction of the necessary school-houses for the use of such independent district, and for the payment of any debts contracted for the erection of such school-houses, and for procuring library and apparatus for the use of the schools of such independent district."

The twelfth general assembly, by an act approved April 5, 1868, empowered independent school-districts to borrow money for the erection and completion of school-houses, and authorized the issuing of negotiable bonds for that purpose, under certain restrictions set forth in the act.    By section 3 it is provided that—

"Nothing in this act shall be deemed to conflict or interfere with subdivision five of section seven of chapter one hundred and seventy-two of the Laws of the Ninth General Assembly of the state of Iowa; but in the event the electors of an independent school-district which has issued bonds, shall, at the annual meeting in March for any year, fail to vote sufficient school-house tax to raise a sum equal to the interest on the outstanding bonds which will accrue during the then coming year, and such *pro rata* portion of the principal as will liquidate and pay off said bonds at maturity, then it shall be lawful for the school board of such district to vote a sufficient per cent. on the taxable property of the district to pay such interest and such *pro rata* portion of the principal as will pay said bonds in full by the time of their maturity, and shall cause the same to be certified and collected the same as other school taxes."

On behalf of the respondents, it is claimed that the bonds owned by the relator were issued under the provisions of this act, and that the clause providing that nothing in the act shall be deemed to conflict or interfere with subdivision 5 of section 7 of chapter 172 of the Acts of the Ninth General Assembly, must be held to mean that independent school-districts are limited to the amount of tax therein authorized to meet the payment of the bonds authorized to be issued.    On behalf of the relator, it is claimed that the only effect of this clause is to provide that the subdivision in question is left in full force as to subdistricts, but is not applicable to independent districts.    If these were the only provisions of the statutes applicable to the case, the question thus presented would be one of doubt, and any conclusion reached therein would be open to some question under the loose phraseology found in these several statutes.

When the Code of 1873 was adopted, it was declared, by section 47 thereof, that—

"All public and general statutes passed prior to the present session of the general assembly, and all public and special acts, the subjects whereof are revised in this Code, or which are repugnant to the provisions thereof, are hereby repealed, subject to the limitations and with the exceptions herein expressed."

Title 12 of the Code is devoted to the subject of education, and chapter 9 thereof deals with the system of common schools, and is, in fact, a revision and amendment of the several statutes previously

enacted on that subject, and consequently, under the declaration contained in section 47, just quoted, all previous acts are repealed, and we must look at the provisions of this chapter, and the amendments subsequently made thereto, in order to ascertain the extent of the taxing power conferred upon independent school-districts.

By section 1807 of the Code it is enacted that—

"It shall be lawful for the electors of any independent district, at the annual meeting of such district, to vote a tax, not exceeding ten mills on the dollar in any one year, on the taxable property of such district, as the meeting may deem sufficient, for the purchase of grounds and the construction of the necessary school-houses for the use of such independent district, and for the payment of any debts contracted for the erection of any such school-houses, and for procuring a library and apparatus for the use of the school of such independent district."

Sections 1821 and 1822 provide for the borrowing of money for the purpose of erecting and completing school-houses, and for the issuing of negotiable bonds, provided authority therefor is given by an affirmative vote by the electors of the district, to whom the question may be submitted at any general or special election.   By section 1823 it is then provided that—

"If the electors of an independent school-district, which has issued bonds, shall, at the annual meeting in March for any one year, fail to vote sufficient school-house tax to raise a sum equal to the interest on the outstanding bonds which will accrue during the then coming year, and such proportionate portion of the principal as will liquidate and pay off said bonds at maturity, then it shall be lawful for the board of such district to vote a sufficient rate on the taxable property of the district to pay such interest and such portion of the principal as will pay said bonds in full by the time of their maturity, and shall cause the same to be certified and collected the same as other school taxes."

Unless the provisions of this section are limited and controlled by section 1807, it is clear that the board of directors have the power to levy such rate of tax as will meet the annual interest and the bonds maturing each year; or, in other words, there is no fixed limit to the rate of taxation when it is necessary to raise funds to meet the interest and principal of bonds issued under authority of a vote of the electors of the district.

Does the limitation of taxation to 10 mills, found in section 1807, control the right of taxation conferred by section 1823? It will be noticed that section 1823 is a revision of section 3 of the act of 1868. The clause of that section providing that nothing therein contained shall be deemed to conflict with subdivision 5, § 7, c. 172, Laws of the Ninth General Assembly, is wholly omitted.   Looking at the entire scope of chapter 9 of the Code of 1873, it is our conclusion that it was not the intent of the legislature to limit the power granted in section 1823 by the provisions of section 1807.   Had such been the intent, some reference, surely, would have been made thereto, but none is incorporated in section 1823.   The grant of power therein is full and complete, without limitation, for the purposes therein con-

templated; *i. e.*, raising sufficient funds by taxation to meet the interest and principal of the bonds lawfully issued under the sanction of the electors of the district. Section 1807 defines the powers of the electors at the ordinary annual meeting. Under its provisions, without any previous notice, those present may authorize a tax for school-house purposes up to the limit of 10 mills, and no provision is made for borrowing money or issuing bonds under the terms of this section. Its provisions, therefore, are intended to define the rights that may be exercised at any annual meeting without previous notice or action on the part of the directors, and are intended to meet the usual annual wants and needs of the district. Sections 1821 and 1822 are intended to provide for unusual and extraordinary demands. If the needs of the district are such that the amount of funds raised by the tax levied under the provisions of section 1807 is insufficient, then the directors of the independent district may submit to the voters of the district, at an annual or special meeting, the question of issuing bonds for the purpose of borrowing money, due notice thereof being given; and if the majority of the votes cast are in favor of the issuing of the bonds, then the board of directors are authorized to issue the same. To meet the indebtedness thus created, section 1823 provides that the electors of the district, at the March meeting, and, failing their action, the board of directors, may vote a sufficient rate of taxation to meet the interest and the principal maturing yearly. There being no limitation found in this section on the power of taxation, it must be held that the legislature did not intend to fix a limit thereto, and that, consequently, it is within the power of the directors to certify a tax in excess of 10 mills, and that it is the duty of the board of supervisors to levy the rate certified by the directors.

The demurrer to the return of the board of supervisors is therefore sustained.

BREWER and LOVE, JJ., concur.