## LOAGUE *v.* TAXING DISTRICT OF BROWNSVILLE.

*(Circuit Court, W. D. Tennessee.  July 28, 1888.)*

MANDAMUS—TO MUNICIPAL BOARDS—JUDGMENT—RES ADJUDICATA.

No defense can be made to a writ of *mandamus* issued upon a judgment by default against a municipal corporation which might have been made to the original suit upon the coupons. *Held,* therefore, where bonds, issued without legislative authority, were invalid, that the defendant corporation was bound by a judgment by default upon the coupons, and could not set up as a defense to the *mandamus* that there was no act commanding the tax to be levied. this being the same defense as the other, when it depends upon the want of authority to issue the bonds, as in this case.

Application for *Mandamus.*

The intestate recovered judgment in this court against the defendant corporation by default.  This is an application for a *mandamus* against the officials charged with the duty of levying taxes to enforce a sufficient levy to pay those judgments.  To the writ return is made that there is no act of the legislature commanding the levy; that the act of February 8, 1870, c. 55, authorizing the bonds, upon coupons from which the judgments were rendered, was abrogated by the new constitution of Tennessee, going into effect May 5, 1870; and that by the same act so abrogated, and not by any other act whatever, were the defendants to this writ authorized to levy the taxes claimed by the writ.  The plaintiff moved to quash this return upon the ground that it was not a sufficient defense, since by the judgments themselves the defense was precluded as already adjudicated between the parties.

*Craft & Cooper,* for plaintiff.

*Smith & Collier* and *Bond & Rutledge,* for defendant.

HAMMOND, J., *(after stating the facts as above.)*  After the decision in *Devereaux* v. *Brownsville,* 29 Fed. Rep. 742, the alternative writ issued in this case, and the defendants make return that the act under which the bonds were issued was abrogated by the new constitution of this state of 1870, and this before the election was ordered, or the bonds issued, whereby they are void; and that by this act only were they ever charged with any duty to levy taxes to pay said bonds.  Thus the same questions are presented as in the other case of *Norton* v. *Brownsville, ante,* 99, (just determined by this court.)  It is not necessary to repeat the facts of that case, which was heard with this for convenience, and both upon the same agreed state of facts, filed in the record.  We there held that the bonds were invalid, and directed a verdict and judgment for the defendant corporation upon the ground that the new constitution, which went into effect before the bonds were issued, abrogated the act of the legislature authorizing them.  *Norton* v. *Brownsville, supra.*  But in this case the plaintiff contends that this defense was settled against the defendant by the judgment by default; that these questions are in this case *res judicata,* and can be no longer open to the defendant.  To this an-

swer is made that the individuals made defendants to this writ of *mandamus* are required to levy the tax demanded only by the statutes of the state of Tennessee imposing that duty upon them; that the object of this *mandamus* is to enforce the performance of that duty; that the judgment, whether by default or upon issue pleaded, adds nothing to the force of that duty, nor to the effect of the statutes under which it is commanded; that, although their predecessors in municipal authority may have neglected to defend the case, the judgment is none the less a mere debt in another form, about which these defendants have no duty to perform unless the act of the legislature authorizing the debt, whether it be in the form of bonds or of judgment, is a valid law, binding on these defendants, and therefore they cannot be compelled to levy taxes to pay an invalid debt.

They further urge that the *fieri facias* is the execution writ for a judgment, and they admit that if such a writ should find property of defendant, payment could be coerced, and no defense like this could be set up to that writ. But the writ of *mandamus* is of a different nature, and, inherently, must be always open to the defense that there is no law requiring the alleged duty to be performed, and that no duty is in fact imposed; that each defendant may in turn make this defense who is supposed to be charged with that duty; that to pay a judgment by paying taxes is not to pay it under a *fieri facias*, but independently of any judgment whatever; that the duty to levy or the writ which commands a levy issues not out of the judgment, like the *fieri facias*, but wholly aside from it, as a new and independent proceeding, and therefore that the judgment concludes nothing as to that writ; that in Tennessee in the state courts, as elsewhere may be done, the *mandamus* may issue without any judgment at all, and the court may command the levy upon the bare application of the creditor; and this defense, being available in such a proceeding, must be just as available if the creditor be required to have a judgment and *nulla bona* return of the *fieri facias* as a preliminary step to qualify him to make the application for a *mandamus;* and that these preliminary qualifications can give him no better standing with the judgment than without, so far as this defense to the *mandamus* is concerned. And this argument is supported by the suggestion of two acts of assembly,—one authorizing the bonds, and another authorizing a tax to be levied to pay them, and imposing on defendants that duty; all under a state of administration that would devolve the duty of issuing the bonds on one official, and the duty of levying the tax on another, and the duty of defending the municipality when sued upon the bonds upon one official, and that of defending against a levy of taxes upon the application for the *mandamus* upon another. "Would a judgment by default upon the bonds under such circumstances conclude the taxing officials upon an application for the *mandamus?* and, if not, why should it, if both these duties be prescribed by one act of the legislature instead of two?"

This argument is very strongly maintained and seems plausible enough, but the court doubts its soundness, unless it goes to the extent of abrogat-

ing the whole force of the judgment in such cases, and reducing it to a mere calculation of the amount due.    Because, if the defense is open on the *mandamus* proceedings to enforce the judgment, it is always open until the money be paid, and, perhaps, even that would not preclude it if a judgment at law does not conclude the defenses that may be set up; and it surely comes to this: that while a judgment would bind all the property of the municipality, and conclude every defense as to its execution in that direction, if the property is in the shape of tax funds to be levied and collected for its payment, the creditor must establish the validity of his bonds, not only in a suit at law against the municipality, but in innumerable other suits, as against any of its officials charged with the duty of levying the tax or collecting it; for these duties may be, and generally are, performed by different officials, any of whom may require a *mandamus* before discharging the duty, respectively.    The municipality is an entire thing, and when it is sued properly it comes before the court as an entirety; and whoever may be charged with that duty must make its defenses, like other defendants make them, once, for all its agents and agencies, all of whom should be bound by a judgment against the municipality itself to the full extent that it has effect; otherwise a judgment against a municipality would not be very effective.    And I do not well see why there should be, in this regard, any peculiar sacredness extending to tax funds and the process of reaching them in satisfaction of a judgment that does not attach to other property leviable upon *fieri facias*.    It is quite true that the authorities speak of the *mandamus* as a new suit, and as an independent proceeding, etc., and, technically, it does not issue upon the judgment as a matter of course as a *fi. fa.;* but even the *fi. fa.* is a judicial writ, and originally required an order of court to authorize it, and only by legislation does it issue ministerially, so to speak, from the clerk without an order of court.    That writ belongs to the judgment as a kind of inherent and attendant incident of it, undoubtedly, and a *mandamus* does not; but still the difference in this regard is exaggerated, it seems to me, when we are asked to hold that because of that difference the judgment debtor may go behind the judgment and reopen defenses which it is admitted are closed as against a *fieri facias*.    The reason for the estoppel applies to one as well as to the other, and, independently of either, rests upon the sure foundation that one brought into a court to answer another must be concluded by the judgment as to all defenses that he made or should properly have made to the suit, or the judgment is a vain and useless thing.    And whatever the law allows in the way of procedure after judgment to enforce it should be protected by this principle, and is.    A suit upon this judgment, for example, would be a new and independent suit in every sense that the proceeding by *mandamus* is new and independent, and, if need be, it could be said to be more independent, indeed; and yet the defendant upon such a suit could not go behind this judgment and set up these defenses that were available when it had its first day in court.    Hence the newness or independency of the *mandamus* proceeding, so much urged in argument, should not affect the question of the estoppel, it seems to me.

It is declared in *U. S.* v. *Macon Co.*, 99 U. S. 582, 591, that the judgment gives no additional right to a levy of taxes than the creditor had before, and the application of that principle is well illustrated by the facts of that case; nor, here, could the judgment creditor ask to enlarge his right to a levy because of the judgment. He does not do this. He only asks that the question of the validity of the legislation giving him the remedy by a levy for the payment of the bonds shall be concluded by a judgment upon the bonds, which establishes, not only that they were valid obligations, but that the given remedy shall be allowed to him. How this might be if the remedial legislation were wholly separate and independent of the legislation authorizing the bonds, we need not, perhaps, inquire; for here the remedy was given by the same act, and became a part of the contract, and a security for it. Any invalidity, therefore, that attached to the act as a whole, should have been set up as a defense, it would seem to me. But I do not wish thus to evade the force of the argument and illustration, and place the ruling on the broader ground that when the municipality was sued upon the bonds it could not delay the defense against the levy of taxes to pay them upon any theory that it would be time enough to make that defense upon the application for *mandamus*. Under some facts and circumstances, perhaps, this might be done, but here the identical defense set up against the levy of taxes is that the act authorizing the bonds was abrogated or repealed before they were issued, and that therefore they were unauthorized. If the bonds are valid, the power to levy taxes is plain, and the duty to do so established. The judgment conclusively declares the validity of the bonds, and that is the end of it. Neither the character of the legislation nor the facts of the case segregate the defense against a levy of taxes from that against the validity of the bonds, but, on the contrary, both show that they are the same, and indivisible, except upon the theory that the tax-levying agency of the municipality is not bound by a judgment against the municipality generally, but may, when called to discharge the duty, show that the judgment should not have been rendered upon the bonds, because they were unauthorized by law, or, what is the same thing so far as this case is concerned, that there is no law imposing the tax they are asked to levy. It is said that the duty to levy taxes is not established by law, to be sure, but this is said only because the bonds have been held in another suit to be invalid, and not for any other reason affecting distinctly and only the duty called in question. Defendants admit that if the bonds are valid the duty exists, and so the real distinction is that, if the bonds may be valid, and still the duty to levy taxes does not arise, then the defense against the levy might, perhaps, be made notwithstanding a judgment. But that is clearly not this case. The defendants' counsel admits that the bonds have been adjudged to be valid by this judgment, but only for the purpose of one writ that may be used in execution, called a *"fieri facias,"* while as to that called a *"mandamus,"* which may likewise be so used if the bonds be valid, the adjudication is denied; but this is a limitation upon the principle that is as destructive of it as if it were wholly denied.

It is not conceived that the case of *Boyd* v. *Alabama*, 94 U. S. 645, affects this question. It is not pretended here that this adjudication by default as to the validity of these bonds precludes further inquiry as to the merits of the defense against them in other suits, even between the same parties, the authority of the legislative act alleged to have been abrogated not having been, in fact, called in question in this case and settled by the court. But it is this very judgment itself that we are asked now to enforce, and certainly that is binding on the parties until it is fully executed, if binding at all. Even the judgment we have just given in the first of these cases, *Norton* v. *Brownsville, supra,* upon other coupons, does not proceed upon any theory of *res judicata,* as between those parties by the former judgment of the circuit judge, which has been there mentioned. The court follows that judgment as a precedent, and rules in the same way as formerly was ruled in another case; but it does not proceed on the ground that the question is closed as by an adjudication. There are cases holding that a judgment upon the same series of bonds or coupons is binding, as upon the principle of *res judicata,* but it is not necessary here to go into the perplexities of that subject. The whole of it is that this return to the *mandamus* is really, though not confessedly, a collateral attack upon a judgment which has become conclusive by a failure to defend the suit originally, or to reverse the judgment upon writ of error. The remedy against the neglect of those officials or agents who failed to do their duty in that regard is by a suit against them for their neglect.

Counsel say on both sides that they find no direct case, unless *Harshman* v. *Knox Co.*, 122 U. S. 306, 7 Sup. Ct. Rep. 1132, be a case in point. The defendant distinguishes that case from this in its facts, and the distinction is obvious, That was a neglect to traverse an averment that might have been traversed, and it was held that the defense was no longer open. It also was a dispute about a fact as to whether the bonds were issued under one act of the legislature or another. Here the entire absence of all legislative authority constitutes the defense, and we have held in other cases that it was a good one. Perhaps, in this case, the defense need not have been pleaded as a fact, since we take judicial notice of the constitution and statutes of a state, and a demurrer to the declaration might have been as effective as any plea. But, after all, that is only a difference in the mode of bringing the evidence before the court of the fact that no legislative authority did exist. The suit and its pleadings averred the existence of that authority as a fact, and the default admitted it, in the face of a judicial knowledge that would have overthrown it, no doubt, if the averment had been challenged in any proper way, but, that not having been done, it passed into judgment that such legislative authority did exist, and that is conclusive. In principle *Harshman* v. *Knox Co., supra,* is, I think, identical with this case, notwithstanding the distinctions pointed out between the two cases.

The motion to quash the return of the defendant to the alternative writ of *mandamus* is granted, and the peremptory writ will issue.