## CITY OF CLEVELAND, TENN., et al., v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. October 8, 1901.)

### No. 934.

1. **MANDAMUS—MUNICIPAL CORPORATION—COMPELLING LEVY OF TAX.**

   A mandamus cannot be awarded to compel the officers of a municipal corporation to levy a tax unless the duty to make such levy is imposed, either expressly or by implication, by some statute of the state from which the corporation derives its powers.

2. **MUNICIPAL CORPORATIONS—POWER OF TAXATION—IMPLICATION FROM AUTHORITY TO CREATE DEBT.**

   Authority to a municipal corporation to levy a tax to pay debts whose creation is authorized by law may be implied when no mode for their payment is prescribed, and there is no limitation upon the power of taxation which repels such an inference, and where the debt is for an extraordinary purpose, requiring special authority for its creation, a general limitation upon the power of taxation for ordinary municipal purposes will not exclude such inference; but if the act conferring the power to create the debt, or any other law in force at the time, contains provisions for a tax to meet such obligations, no extraordinary power of taxation can be implied therefrom.

3. **SAME—DEBTS FOR ORDINARY EXPENSES—WATER AND LIGHTS.**

   Current debts incurred by a municipal corporation for water furnished for public uses and for the lighting of public streets are for ordinary expenses, which may be incurred without special legislative authority; and the fact that the power to contract for water and lighting is among those specially enumerated in the city's charter does not imply any special and additional power of taxation to meet such expense, beyond the limitation imposed by the charter upon taxation for general municipal purposes.

4. **SAME—CHARTER LIMITATION OF POWER OF TAXATION—MANDAMUS TO COMPEL PAYMENT OF JUDGMENT.**

   The charter of the city of Cleveland, Tenn. (Acts 1893, c. 184, § 23), provided that the board of mayor and aldermen should have power "to levy taxes for town and school purposes upon all taxable property * * * not exceeding in the total levy for all general purposes in any year seventy-five cents on one hundred dollars of the total assessment of said property for town and school purposes of that year." Among the other provisions of the charter was one expressly authorizing it to contract for water and lights for public purposes. *Held*, that the latter provision carried no implication of power to levy a special tax to pay for water and lights, which were an ordinary municipal expense, to be paid

from the taxes authorized to be levied for "general purposes," the amount of which was expressly limited, and that the officers of the city could not be compelled by mandamus to levy a tax in excess of such limitation to pay a debt contracted for water and lights. or a judgment rendered thereon, in the absence of statutory authority to lay a special tax for the payment of judgments.[1]

5. SAME.

Where the charter of a city places a limitation upon the total levy of taxes for all general purposes in any one year, the fact that in past years it has not made the full levy does not authorize it to make a levy in excess of the limitation in a subsequent year.

6. MANDAMUS—SUFFICIENCY OF RETURN.

The return made by a city to an alternative writ of mandamus to compel the levy of a tax to pay a judgment in favor of relator, which alleges that taxes have been levied for the current year to the full limit permitted by its charter, and that the entire proceeds of said levy will not be sufficient to pay current expenses, and no part of it can be devoted to the payment of relator's judgment without seriously impairing the efficiency of the city government, cannot be held insufficient on demurrer, when no motion was made to compel it to be made more specific, because it does not show in detail the purposes to which the levy has been apportioned, nor show the details of the city's expenses and liabilities.

7. SAME—MUNICIPAL CORPORATIONS—CONTROL OF DISCRETION OF CITY OFFICERS.

A court in a proceeding for a writ of mandamus to compel a city to pay a judgment in favor of relator has no power to control the discretion of the city authorities in making appropriations from the taxes collected for current municipal expenses, although it may compel the application of any surplus remaining after the payment of such expenses upon relator's judgment, rather than upon other debts previously contracted.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

In 1895 the plaintiff in error contracted for a supply of water for public uses, and for the lighting of its streets by electricity. The tax budget for that year included a tax of 22 cents on each $100 of assessable values for the purpose of paying for the water supply so to be provided, and of 18 cents to meet the expenses of public lighting. This tax was collected, and a part applied on the current contracts, but the remainder has never been so used, but remains in the city treasury or unaccounted for. Subsequently the power of the city to so contract was denied, and the liability repudiated. Suit was thereupon brought to recover upon the contract so far as executed, which resulted in a judgment against the city for $9,852.12 and costs. The questions upon which the city resisted payment, and the grounds upon which it was held liable, appear in the opinion of this court, reported under the style of Cunningham v. City of Cleveland, 98 Fed. 657. 661, 39 C. C. A. 311. Judgment final was rendered in 1899. Execution issued, which was returned nulla bona. Thereupon a petition for a writ of mandamus was duly filed in the court below. To the alternative writ a return was made in substance insisting that the city had exhausted its power of taxation for the current year by assessing a tax of 75 cents on the $100, and that the whole of this tax was essential to the maintenance of its governmental functions, and that no surplus would remain after providing for municipal necessities. A demurrer to the return was sustained. The court below was of opinion that the power to create a debt for water and light implied the power to levy a special tax to pay the judgment rendered upon the debt thus created, and that the limit placed upon the city's power of taxation was inapplicable to a

[1] Mandamus to enforce payment of judgment against municipality, see note to Holt Co. v. National Life Ins. Co., 25 C. C. A. 475.

judgment upon a debt so made. It was also held that the return was insufficient in not setting out the several purposes for which the city had levied a general tax. From this judgment the city has sued out this writ of error.

Pritchard & Sizer, for plaintiffs in error.

Brown & Spurlock, for the United States.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

What are the limitations upon the taxing powers of the plaintiff in error? The return shows that a tax aggregating 75 cents had been laid and was in process of collection when the alternative writ issued. The insistence of the city was ·and is that no authority exists for the levy of any greater rate of tax, and none for any special tax to pay judgments upon claims of the character of that represented by relator. The question as to whether the whole or any part of the fund arising from the tax so already assessed can be appropriated to the payment of the relator's judgment may be postponed, for the first and most important question is whether the limitation set up by the return is applicable in the circumstances of this case. The relator's debt was incurred in 1895, and is for rent of water hydrants and for public street lighting. At that time the city was controlled by the provisions of a special charter granted by the Tennessee legislature April 7, 1893, being an "Act to amend the charter of Cleveland, Tennessee," etc. Chapter 184, Acts 1893. The subsequent amendments of that act are of no importance, since they do not enlarge the taxing powers of the corporation, and could not effectually deprive the relator of any remedy which he had under the law existing at the date of the contract. Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161. Legislation which lessens the efficacy of the means for enforcing the obligation of a contract in existence when the obligation was incurred would conflict with the provision of the constitution prohibiting the impairment of the obligation of contracts. Louisiana v. City of New Orleans, 102 U. S. 203, 26 L. Ed. 132; City of Memphis v. Bethel, 3 Tenn. Cas. 205.

It must, at the outset, be conceded that a mandamus cannot be awarded to compel the mayor and council of the plaintiff in error to levy any tax which they were not authorized to levy by the law of the state from which they derive their powers. The office of such a writ is not to create new duties, but to compel the discharge of those already imposed by the municipal law of the state. In other words, the power to levy the tax which the relator seeks to compel must exist in some legislation, or be plainly implied from some local statute or charter. Carroll Co. Sup'rs v. U. S., 18 Wall. 71, 77, 21 L. Ed. 771; U. S. v. Macon Co., 99 U. S. 582, 591, 25 L. Ed. 331. The limitation set up by the city upon its taxing power is found in section 23 of the charter. That section reads as follows:

"That the board of mayor and aldermen shall have power and authority to levy taxes for town and school purposes upon all taxable property, real, personal and mixed, within the limits of the town, not exceeding in the total levy for all general purposes in any year seventy-five cents on one hundred

dollars of the total assessment of said property for town and school purposes of that year."

It is difficult to misread this provision. It is a plain limitation whereby the taxing power for "town and school purposes" is limited to a "total levy for all general purposes in any year" to "seventy-five cents on one hundred dollars of the total assessment" of city property. By the twenty-eighth section of the same act power is granted to levy and collect taxes upon all property and privileges within the limits of the town, and which are taxable by the state. By the fourteenth section of the act the recorder is constituted the assessing officer, and it is made his duty to assess taxes and deliver to the city "a tax list" which shall be the authority of the city for collecting the taxes of this city. This "tax list" is the document referred to in the last two lines of section 23, above set out, as the "total assessment of said property for town and school purposes of that year." Section 27 is supposed to confer an additional power of taxation. It is as follows:

"That the board of mayor and aldermen. may levy a tax, not exceeding fifteen cents on the hundred, upon all property subject to state taxation, and a street tax of two dollars on all male persons between the ages of eighteen and forty-five years of age within the corporate limits of said city for streets, alleys and sidewalks, and a tax not exceeding twenty-five cents on the hundred upon all property subject to state taxation, and a poll tax not exceeding the state or county poll tax on all male persons between the ages of twenty-one and forty-five years of age within said corporation limits, exclusively for common school purposes."

It will be observed that no language is used indicating that this street and school tax shall be in addition to the "total levy" authorized by section 23. Schools and streets are within the "general purposes" covered by section 23, and "town and school purposes" are specifically mentioned as purposes provided for by the "total levy" authorized by section 23. We can but conclude that the power conferred by section 27 must be construed as subject to the general limitations of the twenty-third section. Weber v. Traubel, 95 Ill. 427; People v. Lake Erie & W. R. Co., 167 Ill. 283, 47 N. E. 518. The cases of Nashville, C. & St. L. R. Co. v. Franklin Co., 5 Lea, 707, and Same v. Hodges, 7 Lea, 663, turned upon the particular terms of the two acts construed. The question is one of legislative intention, and we find no difficulty in reaching the conclusion that the street and school tax authorized by section 27 was not intended as a tax in addition to the "total levy" authorized by section 23, but as subject to the general limitation of that section.

But it is insisted that express power was given to the city to contract for water and lights for public purposes, and that therefore the city has the power by implication to levy a tax to meet such contract. Authority to levy a tax to pay debts whose creation is authorized by law may be implied when no mode for their payment is prescribed, and there is no limitation upon the power of taxation which repels the presumption. This rule was thus stated in Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 660, 22 L. Ed. 460:

"It is to be inferred, when the legislature of a state authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation which repels such an inference."

In U. S. v. City of New Orleans, 98 U. S. 381, 393, 25 L. Ed. 225, 226, it was held that authority to issue bonds to pay for stock subscribed in a railroad implied power to levy a tax to pay the interest and principal of the bonds so authorized. Said the court in the case cited:

"The authorization without providing the means for such expenditures would be an idle and futile proceeding." "Their authorization therefore implies and carries with it the power to adopt the ordinary means employed by such bodies to raise money for their execution, unless such funds are otherwise provided. And the ordinary means in such cases is taxation. A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose."

The principle is an old and familiar one, and has been applied in a variety of instances. Thus, where a thing is granted, such as an estate or franchise, there passes by necessary implication a right to those incidents which are essential to the enjoyment of the principal subject of the grant. In constitutional law it is a familiar principle that the grant of a power, when the mode of its exercise is not defined, implies authority to exercise it in the mode and manner reasonably necessary for its enjoyment. Upon this general principle limitations upon the taxing power of counties and towns have often been held to apply only to debts and expenses for ordinary municipal purposes, and not to those extraordinary debts, such as subscriptions to railroads, which can be incurred only by special legislative authority. Ralls Co. Ct. v. U. S., 105 U. S. 733, 26 L. Ed. 1220; City of Quincy v. Jackson, 113 U. S. 332, 5 Sup. Ct. 544, 28 L. Ed. 1001. "It is now well settled," said the supreme court in Ralls Co. Ct. v. U. S., cited above, "that, when authority is granted by the legislative branch of the government to a municipality or a subdivision of a state to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet at maturity the obligation to be incurred is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention." But although the debt incurred be of an extraordinary character, requiring special authority, any implication of power to levy a tax to meet the extraordinary burden will be repelled if the act conferring the power, or any other law in force at the time, contains a provision providing for a tax to meet such obligations. This is well illustrated in U. S. v. Macon Co., 99 U. S. 582, 590, 25 L. Ed. 331, 333, where it was sought to compel the levy of a special tax for the purpose of meeting the interest upon bonds issued to pay for stock in a railroad. By the law of Missouri, county taxation for general purposes was limited to one-half of 1 per cent. on the taxable value of the property in the county. By a special act, counties were authorized to subscribe for stock in a particular railroad, and to issue bonds to meet such subscription. If there had been nothing more

in this latter act, it might have been presumed that it was the intention of the legislature to grant full power to levy the tax necessary to meet this extraordinary debt. "This implication," said the supreme court, "is, however, repelled by the special provision for the tax of one-twentieth of one per cent., and the case is thus brought directly within the maxim, 'Expressio unius est exclusio alterius.'" Continuing, the court said:

"Thus, while the debt was authorized, the power of taxation for its payment was limited, by the act itself and the general statutes in force at the time, to the special tax designated in the act and such other taxes applicable to the subject as there were, or might thereafter by general or special acts be, permitted."

Applying the principle of these cases to the case in hand, we are met at once by the manifest proposition that current bills for rent of hydrants and for street lighting are not extraordinary expenses, in any sense. Expenses incurred for water furnished for public uses and for the lighting of public streets are ordinary expenses, and debts incurred for current water or lighting purposes are debts contracted within the scope of ordinary municipal purposes, and no special legislative authority is necessary to justify expenditures for such purposes. Dill. Mun. Corp. (4th Ed.) §§ 146, 443, and notes; City of Memphis v. Memphis Water Co., 5 Heisk. 495; Stewart v. Town Co., 50 Kan. 553, 32 Pac. 121; Grant v. C of Davenport, 36 Iowa, 396. That the procurement of water for public purposes and the lighting of the city streets are specially mentioned as among the powers of the city of Cleveland is of no significance. Obligations incurred for those purposes would not be extraordinary debts, justifying a presumption of a special and additional power of taxation. The power to maintain a police force, to abate nuisances, to provide for a quarantine, to establish markets, and a score of other ordinary municipal purposes are likewise specifically authorized in the same section authorizing the rental of water hydrants and the lighting of streets. If the special mention of a power to incur an obligation for water and light justify a presumption of a power to levy a special and additional tax to that authorized for all town and school purposes by the twenty-third section, a like presumption would arise in respect of every other expenditure authorized in terms, and the limitation upon the power of taxation to a total levy of 75 cents would have nothing to operate upon. The case of U. S. v. Town of Cicero (C. C.) 41 Fed. 83, 85, is particularly applicable to this line of argument. Power to issue bonds for the purpose of erecting public buildings, erecting gas works or an electric light plant, and to take stock in any new railroad is conferred by another section upon condition that the ordinance is submitted to a popular vote. But the same section provides for an additional limited tax to meet the extraordinary debts so incurred. No bonds or negotiable securities were issued under the contract with relator, and none were contemplated. The city contracted to pay an annual rental for so many hydrants and so many electric street lights. The debt was not in any sense an extraordinary one, but an ordinary municipal expense, such as

might well be met out of the total levy authorized for all general purposes. No implication of power to levy a special tax to meet a debt of this character arises, in view of the express power to levy and collect a tax not exceeding three-fourths of 1 per cent. upon the assessed value of property subject to city taxation. The fact that the debt of the city has been reduced to a judgment does not help the relator. We have been referred to no legislative power authorizing the imposition of a special tax to meet a judgment against the plaintiff in error. The only power to assess and collect a tax is that found in the provisions of the city charter already discussed.

We have been referred to the case of Butz v. City of Muscatine, 8 Wall. 575, 19 L. Ed. 490. The case has no bearing, inasmuch as we find no statute of the state of Tennessee requiring cities or towns to levy a tax to pay judgments. Such a provision does exist in relation to counties, but it has never been extended to cities, so far as we have been able to find. The case of Mayor, etc., of Town of Bristol v. Dixon, 8 Heisk. 864, was referred to as justifying the levy of a tax to pay a judgment upon a debt incurred by authority of the city charter. The case is not in point. There was no limitation upon the taxing power of Bristol for general purposes. The limitations supposed to apply were those found in Chapter 50, Acts 1870-71, being section 491c of Thompson & Stegers' Tennessee Code, and section 1361 of same Code. The first limited the amount of taxes leviable to meet the extraordinary class of debts described in the act of 1870-71, and the last applied only to taxes levied for educational purposes. The ruling in Fulgum v. Mayor, etc., of City of Nashville, 8 Lea, 635, was to the same effect in respect to Nashville. There is, as we have seen, an express limitation upon the taxing power of the city of Cleveland for general purposes. The debt for which the relator has recovered his judgment, being an ordinary and not an extraordinary debt, must be paid out of the proceeds of the taxes leviable for general purposes.

It is next insisted that the judgment should be affirmed because the return is insufficient, in that it "makes no statement of fact showing to what purposes the levy as made has been apportioned," and because said return shows "no facts or account of the city's revenues and liabilities from which the court can determine whether or not an additional levy may be made for the payment of relator's judgment, or whether or not a portion of the assessment as already levied may not be devoted to its payment." The sixth paragraph of the return, in substance, states that prior to the filing of said petition the defendant had made a levy of 75 cents on the $100 on all property subject to taxation, and also upon all privilege, poll, and other taxes which it has power by law to levy and collect for the current year, and was diligently proceeding to collect same. The same section of the return further states, in substance, that the entire proceeds of said levy and assessment will not be sufficient to pay current expenses, and that "it will be impossible, without serious impairment of the efficiency of the city government, to devote any part of the tax levies for the present year to payment

of petitioner's said judgment." The relator specially demurred to this part of the return:

"First, because it does not show that taxes have been levied to the full extent authorized by the charter and general law of the state; second, because said section contains no statement of fact showing to what purposes the levy as made has been apportioned; third, because said section contains no statement of facts or account of the city's revenues and liabilities from which the court can determine whether or not an additional levy may be made for the payment of relator's judgment, or whether or not a portion of the assessment as already levied may not be devoted to its payment; fourth, because it does not appear from said section or any part of respondent's return what taxes were levied for the years 1896, 1897, 1898, and 1899, during which time suit was pending in which said judgment was rendered."

The first ground of demurrer is bad. We have already determined that the city had no power under its charter or any law of the state to levy any higher rate of tax than that which the return shows has been levied. The taxing power of the city for the current year was therefore exhausted, and no power exists in this court to compel the levy of a tax in addition to that already levied for the purpose of paying the relator's judgment. The fourth ground of demurrer is also bad. The failure of the city to levy the full tax it might have levied for past years does not enlarge its power in subsequent years. The limitation is to a "total levy for all general purposes in any year" of 75 cents on $100 of the assessed values of that year. The remedy afforded by the writ of mandamus is prospective, and the failure of the city in past years to exert its entire taxing power will not justify a levy in any year in excess of the charter limitation.

The second and third grounds of demurrer go to the sufficiency of the return, in that it does not show in detail the purposes to which the levy made has been apportioned, and does not show the details of the city expenses and liabilities. It is clear that no additional levy can be compelled, whether this part of the return be good or bad. It may be that, after providing for the ordinary annual expenses of the city government out of the tax levy already made, a surplus may remain, which should be applied to the payment of the relator's judgment. But the mere fact that the purposes to which the levy made has been apportioned are not specifically stated, and that no itemized statement of the city expenses and income is given, would not justify the court in compelling the levy of a tax additional to that already levied, when it is clearly shown that the total levy already made for general purposes is the maximum tax which the city can levy for any one year. But is this part of the return so insufficient, as matter of law, as to authorize the court to ignore the averment that no part of the tax levied can be applied to the payment of relator's judgment without impairing "the efficiency of the city government"? No motion was made to compel a more detailed or specific answer in this respect. The return is, in substance, identical with the return in Clay Co. v. U. S., 115 U. S. 616, 618, 6 Sup. Ct. 199, 200, 29 L. Ed. 482. The return in the case cited was:

"That the maximum levy for said purpose for the year 1882 will not be sufficient to pay the ordinary current expenses of said county, and that no

part thereof can be applied for the payment of said judgment without seriously impairing the efficiency of said county government."

To this answer the relator demurred, and upon the hearing the court below ordered a definite proportion of the tax so levied paid over on the relator's judgment, and that a like proportion should be levied and collected each year until relator's judgment should be paid. The supreme court, conceding that such part of the full lawful levy as was not required to defray the current expenses chargeable upon the ordinary revenue should be applied to the payment of the relator's debt, said:

"But here the answer shows affirmatively that the whole of the six-mill levy of 1882 will not be sufficient to pay the ordinary current expenses of the county. No effort was made to have the answer more specific and certain, so as to show what the whole amount of the tax would be, and in what way it was to be expended, but the relators were content to go to a hearing upon a general demurrer to the answer as it stood. We must therefore assume the fact to be that a special tax cannot be levied to pay the judgment without embarrassing the county in the administration of its current affairs. It was held in City of East St. Louis v. U. S., 110 U. S. 321. 4 Sup. Ct. 21, 28 L. Ed. 162, decided since the judgment in this case below, that 'the question what expenditures are proper and necessary for the municipal administration is not judicial. It is confided by law to the discretion of the municipal authorities. No court has the right to control that discretion; much less, to usurp and supersede it. To do so in a single year would require a revision of the details of every estimate and expenditure, based upon an inquiry into all branches of the municipal service. To do it for a series of years, and in advance, is to attempt to foresee every exigency, and to provide against every contingency that may arise to affect the public necessities.' "

The proper judgment is this: (1) That the defendant below be required to pay over the sum of $402.20, which the answer shows was levied and collected in 1895 for the specific purpose of complying with this contract, and which has been since held as a water and light fund. (2) That the defendant below be required to diligently proceed to the collection of any uncollected tax so assessed in 1895 for water and lighting purposes, and to pay over such taxes, as collected, upon the judgment of relator. (3) That the defendant below be directed to pay over any surplus which may remain from the proceeds of the total levy made for all purposes in 1900, after defraying the current expenses chargeable upon the ordinary revenue of the city, and that it make a further return showing the amount of the tax so collected, and how same has been applied. (4) That the defendants below be commanded to levy for each year succeeding the entry of this judgment the full tax of 75 cents on the $100 of assessable city property, and the full poll and privilege taxes permitted by the charter of 1893, until the judgment of relator, with interest and costs, shall be fully paid; and, after defraying all ordinary expenses payable out of the revenue so raised each year, it will pay over to the relator any surplus remaining each year, until his judgment shall be paid; and that it make all such other returns as shall be required by the court below, showing how it has obeyed this judgment.

The administrative discretion in respect to expenditure for current municipal expenses will not permit the payment from current

,revenue of claims for past expenditure in preference to the judgment of relator. The surplus applicable to this claim is that which remains after providing for those current expenses proper for the maintenance of the city government, and chargeable against current revenue. The situation of the present case will not permit of a more definite order. That the city cannot reduce its surplus by preferring other debts to that of the relator is plain. Current revenue not properly used for current municipal expenses will constitute a surplus applicable to the relator's judgment. When the return shall be made as to income and expenditure for 1899, it will be the duty of the court below to ascertain the surplus properly applicable to this judgment, and order same paid thereon. In the present situation of this petition, we can make no more definite judgment.

The judgment below is reversed, and the cause remanded, with direction to enter a judgment in accordance with this direction.